MRS. ANNIE E. IRWIN ET AL. *v.* YAZOO & MISSISSIPPI VAL-
LEY RAILROAD.

[55 South. 49.]

1. DEEDS. *Release of claim for damages. Parol evidence to vary writing.*

Where the owner of a tract of land conveyed a part of it to a railroad
company for a right of way for its railroad track and for railroad
purposes, all damages resulting to the rest of the tract were thereby
released and the fact that, simultaneously with the execution of
this deed, another deed was made to another party by which he
divided the land into separate lots, does not alter the situation.

2. PAROL EVIDENCE TO VARY WRITTEN AGREEMENT.

Where the owner of land conveyed it to a railroad company "for a
right of way for its railroad tracks and for railroad purposes," the
fact that there was a verbal agreement, not included in the written
agreement between the railroad company and the owner that a
portion of the lands so conveyed should be used only for depot
purposes, cannot be shown by parol evidence.

APPEAL from the Chancery Court of Tunica county.
HON. M. E. DENTON, Chancellor.

Suit by Mrs. Annie E. Irwin and others against the
Yazoo & Mississippi Valley Railroad Company. From a
judgment dissolving the injunction and dismissing the
bill the complainant appeals.

The facts are as follows:

The land on which the town of Tunica is located was
formerly owned by one Harris. When the predecessor
to the appellee built its lines of railway, Harris deeded
to the railroad company for right of way and railroad
purposes a strip of land fifty feet in width on the east
side of the center of the right of way and seventy-six
and one-half feet on the west side thereof; it being un-
derstood that a depot and other buildings would be
located on the west side of the track. The town of

Tunica was located on both sides of the railroad, a large number of the business houses being located west of the railroad track, and facing what is known as "Edwards Avenue West." Appellants acquired considerable property on Edwards Avenue West, opposite the depot and side tracks of the railroad company. The railroad constructed a long side track, known as the "passing track," on the east side of the center of defendant's right of way, and another side track, known as the "house track," and on the west side of the right of way, on the west of this latter track, it erected a depot for handling passengers and freight, a platform for cotton, etc. Being desirous of enlarging its depot facilities, the railroad company prepared to construct another side track, which would run around the west side of the depot upon the western part of the land conveyed by Harris to the railroad company as a part of its right of way, being on the western edge of the seventy-six and one-half foot strip west of the center of the right of way, which had previously been unused and unoccupied. The railroad company is met with an injunction sued out by appellants, owners of the property adjacent and abutting.

The petition for injunction alleges that the use by the railroad company of the western part of this strip of land, by laying side tracks and running locomotives and setting out cars on the same, will work a great injury to the abutting property owners; that it will make the street upon which their property faces (Edwards Avenue West) much narrower, and that the smoke and noise and vibration is injurious, and that laying this track as contemplated will cause appellants to suffer a great money loss as well as inconvenience. The petitioners contend that the railroad company has dedicated the land along the western border of its right of way west of its depot to the public as a street, and that it has no right now to obstruct this street, and that said

vacant space, which has been used by the public for more than ten years, has become a part of the public street, and that the railroad company cannot take same without due compensation to the abutting owners, as that would be an additional burden on them. They pray an injunction to prevent the railroad company from constructing its track as contemplated.

The appellees answer, denying the allegations of the petition, and deny that they have ever dedicated this portion of their right of way to the public as a street, and aver that their right or title to same has never been surrendered, and that the public had no exclusive use of this part of the right of way, and aver that the side track will be located entirely on the right of way, and that it is necessary for the proper handling of the traffic that these additional improvements be made. It is shown that, when appellants purchased the property from Harris, all streets and alleys were excepted, and also the right of way of the railroad company. It is also shown that similar exceptions are made in the deed by Harris to a large number of lots to the Financial Improvement Company.

Upon the hearing the court dissolved the injunction and dismissed the petition, and from such judgment an appeal is taken.

*Julian C. Wilson* and *John T. Lowe,* for appellants.

The only claim or release of damages by the railroad is on the ground that Harris, the vendor of complainant, made a deed to the twenty-six and a half foot strip for railroad purposes, and this operates as a release on his grantees.

It is true that the complainant bought some of his property from Harris, and some of it from the Financial Improvement Company which was selling for the railroad, as the evidence fully discloses.

This is on the theory that this new damage was compensated for when the original grant was received from Harris. Mr. Harris, however, testifies that he was asked to grant this strip of land, the understanding was that it was to be used for the depot and as an approach to the depot and not for tracks, especially switch tracks. And it was for this that he made the grant and for this he was supposed to have been compensated, although as a matter of fact, he gave this strip of land and half the town for the privilege of having the railroad build its depot.

He distinctly testifies that this sort of use was not in contemplation. That he was induced to give this land for depot room and approaches. This alone answers the proposition that the damages were compensated for and released in the original grant.

In 2 Lewis on Eminent Domain, 3rd Ed., sec. 476; 2nd Ed., 1st, vol., p. 295, it is said:

"Where a right of way was conveyed by deed upon oral representation that it was to be used for a main line only, and switch tracks were afterwards placed thereon, it is held that the purpose for which the deed was made could be shown, and that a recovery could be had for any damages to the grantor's property in excess of that resulting from the main line. Where a deed of right of way was given in pursuance of and as an incident in carrying out a comprehensive verbal agreement, the sole agreement may be shown." *Denisthorye* v. *Fremont, etc., R. R. Co.,* 30 Neb. 142, S. C. 46 B. W. 240; *St. Louis, etc., R. R. Co.* v. *Crandall,* 75 Ark. 89, S. C. 112, Am. St. Rep. 42.

It must be borne in mind that at the time this grant from Harris was made to the railroad, the Constitution of 1869 was in force, which only permitted Harris damages for property taken and did not permit him to recover for property damaged.

It is true that under the Constitution, where part of a tract was taken, the rest of that tract, which was damaged, was compensated for.  We do not mean to be technical, except in answer to technical propositions. As a matter of fact, any human being knows that Harris was not releasing damages when he made this deed and that Harris was giving the railroad the right to build on that property in a way then known and contemplated, and did not and could not have dreamed that they would afterwards encircle the depot with a net work of tracks to put them in close juxtaposition to the leading stores of the town.

The defendant, however, proceeded on a theory to the effect that Harris was releasing all subsequent damages to his vendees for any use to which the railroad desired to put the land, and we were obliged to show that his theory of law does not meet this case.

The effect of Harris' grant was the same as a condemnation proceeding against Harris, no more and no less.  Second Lewis on Eminent Domain, 3d Ed., sec. 474; 2d Ed., sec. 293, is as follows: ''The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation.  The conveyance will be held to be a release of all damages, which would be presumed to be included in the award of damages if the property had been condemned. . . .''

On page 848: ''In general a grant is a bar to such and only such damages as would be included in the assessment or award in case of condemnation.  The damages presumed to be included in the assessment or award in case of condemnation.  The damages presumed to be included in the assessment or award are the subject of a subsequent chapter, where the matter is treated at length (citing chapter 25, from which we shall presently quote). It is sufficient for the present purpose to establish the principle that a deed is a bar to any damages which would

be barred by a condemnation proceeding. Such grant
does not bar the right to recover for damages caused by
the construction of works upon land taken from other
proprietors, nor does it bar a claim for damages to an
entirely distinct tract." *Chicago R. R. Co.* v. *Hazels*,
42 N. W. 96.

Of course this would not be the rule now, under the
Constitution of 1890, but the question is: What was com-
pensated for in 1884 when this grant was made? And it
is shown in 2d Lewis on Eminent Domain, 3d Ed., sec.
823; 2d Ed., sec. 568A.

"The assessment and payment of damages for the tak-
ing of a tract, or part of a tract of land, are no bar to a
subsequent suit for damages to a distinct tract of land
belonging to the same proprietor. This is but the con-
verse of the rule that in estimating compensation for
property taken, damage to an entirely distinct and sepa-
rate tract of land cannot be considered."

To the same effect is the same book, 3d Ed., sec. 697;
2d Ed., sec. 474.

It being established that in 1884 under the Constitu-
tion of 69, Harris could not have received for and there-
fore did not release subsequent damages to a distinct and
separate tract of land. It then remains to be seen what
are distinct and separate tracts of land, and second
whether these lots west of Edwards avenue were distinct
and separate tracts of land from the strip of ground
on which the track is located east of Edwards avenue
west, and eighty feet from it.

We are dealing now with town property, urban lots.
The most conservative rule is that *prima facie* lots plat-
ted into blocks and not used for the same purpose are
considered separate tracts. If, however, they are used
and improved for one purpose, they are not separate
tracts.

For instance, two lots in a block, all of which belong
to the same owner, were taken for a railroad; all were
vacant and unoccupied. It was held that damages to the

other lots could not be recovered, there being no con-
nected use.

Where a block is divided by a street, the parts become
distinct tracts as to each other, where they are mainly
held for sale or use as building lots.

It is held that the subdivision of land into lots, makes
each lot *prima facie* a separate and distinct tract, and
if the owner claims damages to all, or more than the
lot taken, he must produce evidence to overcome this
presumption. Lewis on Eminent Domain, vol. 2, rd. Ed.,
sec. 699; vol. 2, 2d Ed., sec. 475; *Donisthorp* v. *Fremont
R. R. Co.*, 46 N. W. 240; *Wiley* v. *Elwood*, 25 N. E. 570.

Mr. Lewis states the true rule to be that vacant lots
and blocks held for sale or speculation and separated by
streets and alleys, should be regarded as distinct tracts.
See section 699.

This is the rule in Illinois and is the most conservative
rule on the subject. See, also, *Wilcox* v. *St. Paul R. R.
Co.*, 29 N. W. 148; *Koerper* v. *St. Paul R. R. Co.*, 44 N.
W. 195; *White* v. *Metropolitan R. R. Co.* (Ill.), 39 N. E.
270.

Of course, if these lots are used for a connected pur-
pose, the rule does not apply, and they are regarded as
one tract. But where they are merely platted and held
for sale as building lots, they are separate tracts under
most of the decisions, and are so under all the decisions,
where they are separated by streets or alleys, or are in
separate blocks.

If they are regarded as such separate tracts under
the old constitution, no compensation was included or
damages released. Indeed, it is impossible to see how
such damages could have been contemplated or released,
because the law at that time gave none.

*St. John Waddell* and *Mayes & Longstreet*, for ap-
pellee.

The case at bar is clearly in the class of cases where
the right of way was originally a part of a tract owned by

one person, and in acquiring the right of way, the owner was settled with, not only for the value of the right of way actually occupied and taken, but also for all damages which were then known to necessarily result to his adjacent lands by reason of the purpose for which the right of way was granted, and the reasonable uses within these purposes it would be used for.

The class of cases decided by this court holding that an owner of property adjacent to a right of way, can, under the Constitution of 1890, recover damages for injury to said property, or for injury to some right growing out of the same, although no part of the property was ever taken, is cited in the following cases: *King* v. *Railroad Co.,* 88 Miss. Rep. 456; *Railroad Co.* v. *King,* 47 So. Rep. 857.

The class of cases decided by this court, holding that where part of a tract is taken or condemned, that the land owner under the old Constitution of 1869 should be paid the fair market value of the property taken, and all damages to his adjacent property occasioned by the taking of the same, considering the public use for which the same would be used, are cited in the following cases: *Isham* v. *Railroad Co., supra; Richardson* v. *Levee Commissioners,* 68 Miss. Rep. 539.

If then, E. L. Harris, when he deeded appellee the right of way in question, was paid and received full consideration for the value of the same, and all damages which his adjacent property would sustain by reason of the taking of same, and growing out of the uses for which said right of way would be used, and it being then shown and intended by him that he would use the property bordering on the west line of Edwards avenue west, for the purpose of building thereon, stores, hotels, banks, and other business houses, then when the appellant afterwards purchased said property from him, he did so subject to the rights of appellee on its right of way, and cannot now complain of any proper use that the appellee

99 Miss.—26

makes of said right of way within the purposes for which the same was acquired by it; any other rule would subject the appellee to the payment of the same damages to each succeeding purchaser of the property, and it would have no protection, in the fact that it had previously paid same to the proper party entitled to receive said damages.

There is nothing ambiguous in the right of way deed. It is clear and explicit, and does not need a court to construe it, or tell its meaning, and by its plain language, it grants to the railroad company the full width of the right of way through the town for railroad purposes, and the appellant claims title to all of the property he owns in the town of Tunica under E. L. Harris, or in other words, the parties to this suit both claim title derived. from a common source, and there is nothing obscure or ambiguous, or that needs construction in the deed, under which the appellee claims title.

Again counsel for appellant in his brief, claims that his theory of the construction of the right of way deeds is strengthened by what E. L. Harris understood his deed to mean when he executed it, and the way he understood the railroad company would use the right of way granted. I respectfully submit, that any testimony of Mr. Harris as to how he thought the railroad company would use the right of way when he made the deed, is extremely incompetent and irrelevant, and he ought not to be permitted in any court, after executing a solemn deed, to come forward twenty years afterwards and say that he thought so and so, at the time he executed it, and seek to impair the ordinary meaning and effect of his grant, and for which he was paid full consideration.

Argued orally by *Julian C. Wilson,* for appellant, and *C. S. Sively* and *St. John Waddell,* for appellee.

SMITH, J., delivered the opinion of the court.

Nothing contained in the deed from Harris to the railroad company and to the Financial Improvement Company, nor in the conduct of the parties after the execution thereof, constitutes a dedication of any part of the land in controversy to the town of Tunica or to the public for street purposes. Neither has there been such an adverse user of the lands by the public as to make it part of the street by prescription.

When the deed from Harris to the railroad company was executed, all damages resulting to the property now owned by appellants were thereby necessarily released, for the reason that at the time Harris was the owner of the entire tract of land out of which the lots now owned by appellants were carved. The fact that, simultaneously with the execution of this deed, another deed was made by Harris, by which he divided the land into separate lots, does not alter the situation.

It may be that Harris and the railroad company had a verbal agreement that the additional twenty-six and one-half feet of land conveyed was to be used only for depot purposes; but this agreement, not having been included in the written agreement contained in the deed, cannot, under elementary rules, be now added thereto by parol. According to the deed, the land was conveyed "for a right of way for its railroad track and for railroad purposes."                    *Affirmed and remanded.*